Name *Francisco Xavier Lizarraga*

Address ~~————~~ *A-4-114-L*

*P. O. Box 1050*

*Soledad Ca. 93960-1050*

CDC or ID Number *P 89773*

E-filing

## UNITED STATES DISTRICT COURT

### For the Northen District

(Court)

| | |
|---|---|
| *Francisco Xavier Lizarraga*<br>Petitioner<br><br>vs.<br><br>*People of the State of California*<br>Respondent | PETITION FOR WRIT OF HABEAS CORPUS<br><br>CV 08<br>No. ____ 1359<br>(To be supplied by the Clerk of the Court)<br><br>SI<br><br>(PR) |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

### PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

- [✓] A conviction
- [ ] Parole
- [✓] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify):* _____

1. Your name: *Francisco Javier Lizarraga*

2. Where are you incarcerated? *Salinas Valley State Prison*

3. Why are you in custody? [✓] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

*COUNT (1) KIDNAP TO COMMIT ROBBERY: COUNT (2) KIDNAP FOR CARJACKING: COUNT (3) ROBBERY 2ND COUNT (4) CARJACKING. ALSO ALLEGATION OF USE OF FIREARM*

b. Penal or other code sections: *209 (B)(1), 209.5(A), 211, 215(A) 12022.53 (B)*

c. Name and location of sentencing or committing court: *Los Angeles County Superior Court. Dept 122, 210 West Temple Street*

d. Case number: *BA-199787*

e. Date convicted or committed: *July 10TH 2000*

f. Date sentenced: *July 25TH 2000*

g. Length of sentence: *17 YEARS TO LIFE*

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court? [✓] Yes.  [ ] No. If yes, state the attorney's name and address:

*PHILIP E. NAMETH*          *221 E. WALNUT #240*
                            *Pasadena, CA. 91101*

4. What was the LAST plea you entered? *(check one)*

[✓] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[✓] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

8. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

APPELLANTS   SENTENCE  OF  17 YRS  TO LIFE  VIOLATED
6TH  AND  8TH  AMENDMENT  U.S.C.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly *what* to violate your rights *at what time (when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(✱)(A) APPELLANTS  SENTENCE OF 17 YEARS TO LIFE VIOLATED THE
PROHIBITION  AGAINST  CRUEL  AND /OR  UNUSUAL  PUNISHMENT
UNDER STATE AND  FEDERAL  Constitution.
(✱)(B) INEFFECTIVE ASSISTANCE  OF COUNSEL FOR FAILURE TO OBJECT
ON  THE BASES OF CRUEL AND UNUSUAL PUNISHMENT.
(✱)(C) THE JURY WAS IMPROPERLY INSTRUCTED AS TO THE
BURDEN OF PROOF IN THE VERSION OF CALJIC 2.90 READ
TO THE JURY IN THAT IT LOWERED THE PROSECUTIONS
BURDEN OF PROOF BELOW THE REQUIREMENTS OF
CONSTITUTIONAL DUE PROCESS.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.
UNITED STATE DISTRICT COURT

13. a. (1) Name of court: CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

    (2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS COURPUS PETITION

    (3) Issues raised: (a) DENIED

        (b) _____

    (4) Result (Attach order or explain why unavailable): DENIED

    (5) Date of decision: JAN 6- 2004

  b. (1) Name of court: SECOND APPELLANTE DISTRICT

    (2) Nature of proceeding: NEW CASE LAW
APPELLANTS SENTENCE OF 17 Y125 TO LIFE VIOIATED
    (3) Issues raised: (a) 6TH AND 8TH AMENDMENT U.SC.

        (b) _____

    (4) Result (Attach order or explain why unavailable): DENIED

    (5) Date of decision: JuL 26 2007

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
SUPREME COURT OF CALIFORNIA (08-19-07) DENIED-ON (02-13-08

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
SUPREME COURT OF CALIFORNIA 08-19-07 DENIED ON (02-13-08)

16. Are you ...ntly represented by counsel? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 02-24-08

                           (SIGNATURE OF PETITIONER)

# Exhibit



Service: **Get by** LEXSEE®
Citation: 2007 u.s. lexis 1324

2007 U.S. LEXIS 1324, *

JOHN CUNNINGHAM, PETITIONER v. CALIFORNIA

No. 05-6551

SUPREME COURT OF THE UNITED STATES

2007 U.S. LEXIS 1324

October 11, 2006, Argued
January 22, 2007, Decided

NOTICE: [*1]

The LEXIS pagination of this document is subject to change pending release of the final published version.

PRIOR HISTORY: ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, FIRST APPELLATE DISTRICT. People v. Cunningham, 2005 Cal. LEXIS 7128 (Cal. June 29, 2005)

DISPOSITION: Reversed in part and remanded.

CORE TERMS: sentence, sentencing, guidelines, upper term, reasonableness, advisory, aggravation, statutory maximum, factfinding, aggravating, preponderance, imprisonment, middle term, enhancement, mandatory, mitigation, sentenced, implicate, remedial, offender, authorize, Reform Act, beyond a reasonable doubt, enhanced sentence, maximum sentence, jury-trial, binding, mail fraud, prescribed, broad discretion

SYLLABUS: Petitioner Cunningham was tried and convicted of continuous sexual abuse of a child under 14. Under California's determinate sentencing law (DSL), that offense is punishable by one of three precise terms of imprisonment: a lower term sentence of 6 years, a middle term sentence of 12 years, or an upper term sentence of 16 years. The DSL obliged the trial judge to sentence Cunningham to the 12-year middle term unless the judge found one or more additional "circumstances in aggravation." Court Rules adopted to implement the DSL define "circumstances in aggravation" as facts that justify the upper term. Those facts, the Rules provide, must be established by a preponderance [*2] of the evidence. Based on a post-trial sentencing hearing, the judge found by a preponderance of the evidence six aggravating facts, including the particular vulnerability of the victim, and one mitigating fact, that Cunningham had no record of prior criminal conduct. Concluding that the aggravators outweighed the sole mitigator, the judge sentenced Cunningham to the upper term of 16 years. The California Court of Appeal affirmed. The State Supreme Court denied review, but in a decision published nine days earlier, People v. Black, 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740, 113 P.3d 534, that court held that the DSL survived Sixth Amendment inspection.

Held: The DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. Pp. 8-22.

(a) In Apprendi v. New Jersey, this Court held that, under the Sixth Amendment, any fact (other than a prior conviction) that exposes a defendant to a sentence in excess of the relevant statutory maximum must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. [*3] See 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435. The Court has applied the rule of Apprendi to facts subjecting a defendant to the death penalty, Ring v. Arizona, 536 U.S. 584, 602, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556, facts permitting a sentence in excess of the "standard range" under Washington's Sentencing Reform Act (Reform Act), Blakely v. Washington, 542 U.S. 296, 304-305, 124 S. Ct. 2531, 159 L. Ed. 2d 403, and facts triggering a sentence range elevation under the then-mandatory Federal Sentencing Guidelines, United States v. Booker, 543 U.S. 220, 243-244, 125 S. Ct. 738, 160 L. Ed. 2d 621. Blakely and Booker bear most closely on the question presented here.

The maximum penalty for Blakely's offense, under Washington's Reform Act, was ten years' imprisonment, but if no facts beyond those reflected in the jury's verdict were found by the trial judge, Blakely could not receive a sentence above a standard range of 49 to 53 months. Blakely was sentenced to 90 months, more than three years above the standard range, based on the judge's finding of deliberate cruelty. Applying Apprendi, this Court held the sentence unconstitutional. The State in Blakely endeavored to distinguish Apprendi, contending that [*4] Blakely's sentence was within the judge's discretion based solely on the guilty verdict. The Court dismissed that argument. Blakely could not have been sentenced above the standard range absent an additional fact. Consequently, that fact was subject to the Sixth Amendment's jury-trial guarantee. It did not matter that Blakely's sentence, though outside the standard range, was within the 10-year maximum. Because the judge could not have imposed a sentence outside the standard range without finding an additional fact, the top of that range -- 53 months, not 10 years -- was the relevant statutory maximum. To the extent that Apprendi was satisfied because the Reform Act did not specify an exclusive catalog of facts on which a judge might base a departure from the standard range, and because it ultimately left the decision whether or not to depart to the judge's discretion.

Booker was sentenced under the Federal Sentencing Guidelines. The facts found by the jury yielded a base Guidelines range of 210 to 262 months' imprisonment, a range the judge could not exceed without undertaking additional factfinding. The judge did so, making a finding that [*5] boosted Booker into a higher Guidelines range. This Court held Booker's sentence impermissible under the Sixth Amendment. There was "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [Blakely]." 543 U.S. at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. Both were "mandatory and imposed binding requirements on all sentencing judges." Ibid. All Members of the Court agreed, however, that the Guidelines would not implicate the Sixth Amendment if they were advisory. Ibid. Facing the remedial question, the Court concluded that rendering the Guidelines advisory came closest to what Congress would have intended had it known that the Guidelines were vulnerable to a Sixth Amendment challenge. Under the advisory Guidelines system described in Booker, judges would no longer be confined to the sentencing range dictated by the Guidelines, but would be obliged to "take account" of that range along with the sentencing goals enumerated in the Sentencing Reform Act (SRA). Id. at 259, 264, 125 S. Ct. 738, 160 L. Ed. 2d 621. In place of the SRA provision governing appellate review of sentences under the mandatory Guidelines scheme, the Court installed [*6] a "reasonableness" standard of review. Id., at 261, 125 S. Ct. 738, 160 L. Ed. 2d 621. Pp. 8-15.

(b) In all material respects, California's DSL resembles the sentencing systems invalidated in Blakely and Booker. Following the reasoning in those cases, the middle term prescribed under California law, not the upper-term, is the relevant statutory maximum. Because aggravating facts that authorize the upper term are found by the judge, and need only be established by a preponderance of the evidence, the DSL violates the rule of Apprendi.

While "that should be the end of the matter," *Blakely*, 542 U.S., at 313, 124 S. Ct. 2531, 159 L. Ed. 2d 403, *in People v. Black*, the California Supreme Court insisted that the DSL survives inspection under our precedents. The *Black* court reasoned that, given the ample discretion afforded trial judges to identify aggravating facts warranting an upper term sentence, the DSL did "not represent a legislative effort to shift the proof of particular facts from elements of a crime (to be proved to a jury) to sentencing factors (to be decided by a judge)," 35 Cal. 4th, at 1255-1256, 113 P. 3d, at 543-544. This Court cautioned in *Blakely*, however, [**7**] that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in a particular case, does not shield a sentencing system from the force of this Court's decisions. The *Black* court also urged that the DSL is not cause for concern because it reduced the penalties for most crimes over the prior indeterminate sentencing scheme; because the system is fair to defendants; and because the DSL requires statutory sentence enhancements (as distinguished from aggravators) to be charged in the indictment and proved to a jury beyond a reasonable doubt. The *Black* court's examination, in short, satisfied it that California's sentencing system does not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee. This Court's decisions, however, leave no room for such an examination. Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, is the very inquiry *Apprendi*'s bright-line rule was designed to exclude.

Ultimately, the *Black* court relied on an equation of California's DSL to the [**8**] post-*Booker* federal system. That attempted comparison is unavailing. The *Booker* Court held the Federal Guidelines incompatible with the Sixth Amendment because they were "mandatory and imposed binding requirements on all sentencing judges." 543 U.S., at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. To remedy the constitutional infirmity, the *Booker* Court excised provisions that rendered the system mandatory, leaving the Guidelines in place as advisory only. The DSL, however, does not resemble the advisory system the Court in *Booker* had in view. Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." *Ibid.* California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years, but had to impose 12 years, nothing less and nothing more, unless the judge found facts allowing a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, this Court's decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of [**9**] a judge determining where the preponderance of the evidence lies.

The *Black* court attempted to rescue the DSL's judicial factfinding authority by typing it a reasonableness constraint, equivalent to the constraint operative in the post-*Booker* federal system. Reasonableness, however, is not the touchstone of Sixth Amendment analysis. The reasonableness requirement *Booker* anticipated for the federal system operates *within* the constitutional constraints delineated in this Court's precedent, not as a substitute for those constraints. Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. *Booker*'s remedy for the Federal Guidelines, in short, is not a recipe for rendering this Court's Sixth Amendment case law toothless. Further elaboration here on the federal reasonableness standard is neither necessary nor proper. The Court has granted review in two cases -- to be argued and decided later this Term -- raising questions trained on that matter. *Claiborne v. United States*, 127 S. Ct. 551, 166 L. Ed. 2d 406; *Rita v. United States*, 127 S. Ct. 551, 166 L. Ed. 2d 406; Pp. 15-21.

(c) As to [**10**] the adjustment of California's sentencing system in light of the Court's ruling, "the ball . . . lies in [California's] court." *Booker*, 543 U.S., at 265, 125 S. Ct. 738, 160 L. Ed. 2d 621. Several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing, by calling upon the jury to find any fact necessary

to the imposition of an elevated sentence. Other States have chosen to permit judges genuinely "to exercise broad discretion . . . within a statutory range," which, "everyone agrees," encounters no Sixth Amendment shoal. *Id.*, at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. California may follow the paths taken by its sister States or otherwise alter its system, so long as it observes Sixth Amendment limitations declared in this Court's decisions. Pp. 21-22.

Reversed in part and remanded.

JUDGES: GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which BREYER, J., joined. ALITO, J., filed a dissenting opinion, in which KENNEDY and BREYER, JJ., joined.

OPINION BY: GINSBURG

OPINION: JUSTICE GINSBURG delivered the opinion of the Court.

California's determinate [*11*] sentencing law (DSL) assigns to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated "upper term" sentence. The facts so found are neither inherent in the jury's verdict nor embraced by the defendant's plea, and they need only be established by a preponderance of the evidence, not beyond a reasonable doubt. The question presented is whether the DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. We hold that it does.

As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The relevant "statutory maximum," this Court has clarified, "is not [*12*] the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S., at 303-304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original). In petitioner's case, the jury's verdict alone limited the permissible sentence to 12 years. Additional factfinding by the trial judge, however, yielded an upper term sentence of 16 years. The California Court of Appeal affirmed the harsher sentence. We reverse that disposition because the four-year elevation based on judicial factfinding denied petitioner his right to a jury trial.

I

A

Petitioner John Cunningham was tried and convicted of continuous sexual abuse of a child under the age of 14. Under the DSL, that offense is punishable by imprisonment for a lower term sentence of 6 years, a middle term sentence of 12 years, or an upper term sentence of 16 years. Cal. Penal Code Ann. § 288.5(a) (West 1999) (hereinafter Penal Code). As further explained below, see *infra*, at 4-7, the DSL obliged the trial judge to sentence Cunningham to the 12-year middle term unless the judge found one or more additional facts in aggravation. Based on a post-trial sentencing hearing, the [*13*] trial judge found by a preponderance of the evidence six aggravating circumstances, among them, the particular vulnerability of the victim, and Cunningham's violent conduct, which indicated a serious danger to the community. Tr. of Sentencing (Aug. 1, 2003), App. 22; n.1 In mitigation, the judge found

one fact: Cunningham had no record of prior criminal conduct. *Ibid*. Concluding that the aggravators outweighed the sole mitigator, the judge sentenced Cunningham to the upper term of 16 years. *Id.*, at 23.

- - - - - - - - - - Footnotes - - - - - - - - - -

n1 The particular vulnerability of the victim is listed in Cal. Rule of Court 4.421(a)(3) (Criminal Cases) (West 2006) (hereinafter Rule), as a fact "relating to the crime." Violent conduct indicating a serious danger to society is listed in Rule 4.421(b)(1) as a fact "relating to the defendant."

- - - - - - - - - End Footnotes - - - - - - - - -

A panel of the California Court of Appeal affirmed the conviction and sentence; one judge dissented in part, urging that this Court's precedent precluded the judge-determined four-year increase in Cunningham's [*14] sentence. No. A103501 (Apr. 18, 2005), App. 43-48; *id.*, at 46-50 (Jones, J., concurring in part and dissenting in part). n2 The California Supreme Court denied review. No. S133971 (June 29, 2005) (en banc), *id.*, at 52. In a reasoned decision published nine days earlier, that court considered the question here presented and held that the DSL survived *Sixth Amendment* inspection. *People v. Black, 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740, 113 P. 3d 534 (June 20, 2005).*

- - - - - - - - - - Footnotes - - - - - - - - - -

n2 In addition to a *Sixth Amendment* challenge, Cunningham disputed the substance of five of the six findings made by the trial judge. The appellate panel affirmed the trial judge's vulnerable victim and violent conduct findings, but rejected the finding that Cunningham abused a position of trust (because that finding overlapped with the vulnerable victim finding). The panel did not decide whether the judge's other findings were warranted, concluding that he properly relied on at least two aggravating facts in imposing the upper term, and that it was not "reasonably probable" that a different sentence would have been imposed absent any improper findings. App. 43-46; *id.*, at 51 (May 4, 2005, order modifying opinion and denying rehearing).

- - - - - - - - - End Footnotes - - - - - - - - - [*15]

B

Enacted in 1977, the DSL replaced an indeterminate sentencing regime in force in California for some 60 years. See *id.*, at 1246, 113 P. 3d 537; Cassou & Taugher, Determinate Sentencing in California: The New Numbers Game, 9 Pac. L. J. 5, 6-22 (1978) (hereinafter Cassou & Taugher). Under the prior regime, courts imposed open-ended prison terms (often one year to life), and the parole board -- the Adult Authority -- determined the amount of time a felon would ultimately spend in prison. *Black, 35 Cal. 4th, at 1246, 1256, 113 P. 3d, at 1537, 544; In re Roberts, 36 Cal. 4th 575, 588, n. 6, 31 Cal. Rptr. 3d 458, 115 P. 3d 1121, 1129, n. 6 (2005);* Cassou & Taugher 5-9. In contrast, the DSL fixed the terms of imprisonment for most offenses, and eliminated the possibility of early release on parole. See Penal Code § 3000 *et seq.* (West Supp. 2006); 3 B. Witkin & N. Epstein, California Criminal Law § 610, p. 809 (3d ed. 2000); Brief for Respondent 7. n3 Through the DSL, California's lawmakers aimed to promote uniform and proportionate punishment. Penal Code § 1170(a) (1); *Black, 35 Cal. 4th, at 1246, 113 P. 3d, at 537.*

n3 Murder and certain other grave offenses still carry lengthy indeterminate terms with the possibility of early release on parole. Brief for Respondent 7, n. 2. See, *e.g.*, Penal Code § 190 (West Supp. 2006).

- - - - - - - - - End Footnotes - - - - - - - - - [*16]

For most offenses, including Cunningham's, the DSL regime is implemented in the following manner. The statute defining the offense prescribes three precise terms of imprisonment -- a lower, middle, and upper term sentence. *E.g.*, Penal Code § 288.5(a) (West 1999) (a person convicted of continuous sexual abuse of a child "shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years"). See also *Black, 35 Cal. 4th, at 1247, 113 P. 3d, at 538,* Penal Code § 1170(b) (West Supp. 2006) controls the trial judge's choice; it provides that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." "Circumstances in aggravation or mitigation" are to be determined by the court after consideration of several items: the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; "and any further evidence introduced at the sentencing hearing." *Ibid.*

The DSL directed the State's Judicial Council n4 to adopt Rules guiding the sentencing judge's decision whether to "impose the lower or upper [*17] prison term." Penal Code § 1170.3(a)(2) (West 2004). n5 Restating § 1170(b), the Council's Rules provide that "the middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." Rule 4.420(a). "Circumstances in aggravation," as crisply defined by the Judicial Council, means "facts which justify the imposition of the upper prison term." Rule 4.405(c) (emphasis added). Facts aggravating an offense, the Rules instruct, "shall be established by a preponderance of the evidence." Rule 4.420(b), n6 and must be "stated orally on the record." Rule 4.420(e).

- - - - - - - - - - Footnotes - - - - - - - - - -

n4 The Judicial Council includes the chief justice and another justice of the California Supreme Court, three judges sitting on the Courts of Appeal, ten judges from the Superior Courts, and other nonvoting members. Cal. Const., Art. 6, § 6(a) (West Supp. 2006). The California Constitution grants the Council authority, *inter alia*, "to adopt rules for court administration, practice and procedure, and perform other functions prescribed by statute." Art. 6, § 6(d).

n5 The Rules were amended on January 1, 2007. Those amendments made technical changes, none of them material to the constitutional question before us. We refer in this opinion to the prior text of the Rules, upon which the parties and principal authorities rely. [*18]

n6 The judge must provide a statement of reasons for a sentence only when a lower or upper term sentence is imposed. Rules 4.406(b), 4.420(e).

- - - - - - - - - End Footnotes - - - - - - - - -

The Rules provide a nonexhaustive list of aggravating circumstances, including "facts relating to the crime," Rule 4.421(a), n7 "facts relating to the defendant," Rule 4.421(b), n8 and "any other facts statutorily declared to be circumstances in aggravation," Rule 4.421(c). Beyond the enumerated circumstances, "the judge is free to consider any 'additional criteria reasonably related to the decision being made.'" *Black*, 35 Cal. 4th, at 1247, 113 P. 3d, at 538 (quoting Rule 4.408(a)). "A fact that is an element of the crime,' however, 'shall not be used to impose the upper term.'" Rule 4.420(b). In California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts -- whether related to the offense or the offender -- beyond the elements of the charged offense.

- - - - - - - - - - - Footnotes - - - - - - - - - - -

n7 *E.g.*, Rule 4.421(a)(1) ("The fact that . . . the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."). [*19]

n8 *E.g.*, Rule 4.421(b)(1) ("The fact that . . . the defendant has engaged in violent conduct which indicates a serious danger to society.").

- - - - - - - - - - End Footnotes - - - - - - - - - -

JUSTICE ALITO maintains, however, that a circumstance in aggravation need not be a fact at all. In his view, a policy judgment, or even a judge's "subjective belief" regarding the appropriate sentence, qualifies as an aggravating circumstance. *Post*, at 11-12 (dissenting opinion). California's Rules, however, constantly refer to "facts." As just noted, the Rules define "circumstances in aggravation" as "facts which justify the imposition of the upper prison term." Rule 4.405(d) (emphasis added), n9 and "circumstances in aggravation," the Rules unambiguously declare, "shall be established by a preponderance of the evidence." Rule 4.420(b), a clear factfinding directive to which there is no exception: See *People v. Hall*, 8 Cal. 4th 950, 957, 35 Cal. Rptr. 2d 432, 883 P. 2d 974, 928 (1994) ("Selection of the upper term is justified *only* if circumstances in aggravation are established by a preponderance of evidence . . . ." (emphasis added)).

- - - - - - - - - - - Footnotes - - - - - - - - - - -

n9 See also, *e.g.*, Rule 4.420(b) ("Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." (emphasis added)); Rule 4.420(e) (court must provide "a concise statement of the ultimate facts that the court deemed to constitute circumstances in aggravation or mitigation" (emphasis added)).

- - - - - - - - - - End Footnotes - - - - - - - - - -   [*20]

While the Rules list "general objectives of sentencing," Rule 4.410(a), nowhere are these objectives cast as "circumstances in aggravation" that alone authorize an upper term sentence. The Rules also state that "the enumeration . . . of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria"

reasonably related to the decision being made." Rule 4.408(a), California courts have not read this language to unmoor "circumstances in aggravation" from any 'factfinding anchor.'

In line with the Rules, the California Supreme Court has repeatedly referred to circumstances in aggravation as "facts." See, *e.g.*, *Black*, 35 Cal. 4th, at 1256, 113 P. 3d, at 544 ("The Legislature did not identify all of the particular facts that could justify the upper term." (emphasis added)); *People v. Wiley*, 9 Cal. 4th 580, 587, 38 Cal. Rptr. 2d 347, 889 P. 2d 541, 545 (1995) ("Trial courts are assigned the task of deciding whether to impose an upper or lower term of imprisonment based upon their determination whether there are *requires* [**11] *numerous factual findings.*" (emphasis added and internal quotation marks omitted)).

It is unsurprising, then, that State's counsel, at oral argument, acknowledged that he knew of no case in which a California trial judge had gone beyond the middle term based on any fact the judge found, but solely on the basis of a policy judgment or subjective belief. See Tr. of Oral Arg. 49-50.

Notably, the Penal Code permits elevation of a sentence above the upper term based on specified statutory enhancements relating to the defendant's criminal history (*e.g.*, Penal Code § 667 *et seq*. (West Supp. 2006)); § 12022 *et seq*. See also *Black*, 35 Cal. 4th, at 1257, 113 P. 3d, at 545. Unlike aggravating circumstances, statutory enhancements must be charged in the indictment, and the underlying facts must be proved to the jury beyond a reasonable doubt. Penal Code § 1170.1 (e); *Black*, 35 Cal. 4th, at 1257, 113 P. 3d, at 545. A fact underlying an enhancement cannot do double duty; it cannot be used to impose an upper term sentence and, on top of that, an enhanced term. Penal Code § 1170(b). Where permitted by statute, [**12] however, a judge may use a fact qualifying as an enhancer to impose an upper term rather than an enhanced sentence. *Ibid.*; Rule 4.420(c).

II

This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. While this rule is rooted in longstanding common-law practice, its explicit statement in our decisions is recent. In *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), we examined the Sixth Amendment's historical and doctrinal foundations, and recognized that judicial factfinding operating to increase a defendant's otherwise maximum punishment posed a grave constitutional question. *Id.*, at 239-252, 119 S. Ct. 1215, 143 L. Ed. 2d 311. While the Court construed the statute at issue to avoid the question, the *Jones* opinion presaged our decision, some 15 months later, in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Charles Apprendi was convicted of possession of a firearm for an unlawful purpose, a second-degree offense under New Jersey law punishable by five to [*23] ten years' imprisonment. *Id.*, at 468-470, 120 S. Ct. 2348, 147 L. Ed. 2d 435. A separate "hate crime" statute authorized an "extended term" of imprisonment: Ten to twenty years could be imposed if the trial judge found, by a preponderance of the evidence, that "the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id.*, at 468-469, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (quoting N. J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999-2000)). The judge in Apprendi's case so found, and therefore sentenced the defendant to 12 years' imprisonment. This Court held that the Sixth Amendment proscribed the enhanced sentence. 530 U.S., at 471, 120 S. Ct. 2348, 147 L. Ed. 2d 435. Other than a prior conviction, we held, *Almendarez-Torres v. United States*, 523 U.S. 224, 239-247, 118 S. Ct. 1219, 140 L. Ed. 2d

350 (1998)), we held in *Apprendi,* "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435. See also *Harris v. United States,* 536 U.S. 545, 557-566, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) (plurality opinion) ("*Apprendi* [*24] said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime -- and thus the domain of the jury -- by those who framed the Bill of Rights.").

We have since reaffirmed the rule of *Apprendi,* applying it to facts subjecting a defendant to the death penalty, *Ring v. Arizona,* 536 U.S. 584, 602, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), facts permitting a sentence in excess of the "standard range" under Washington's Sentencing Reform Act, *Blakely v. Washington,* 542 U.S. 296, 304-305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and facts triggering a sentence range elevation under the then-mandatory Federal Sentencing Guidelines, *United States v. Booker,* 543 U.S. 220, 243-244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). *Blakely* and *Booker* bear most closely on the question presented in this case.

Ralph Howard Blakely was convicted of second-degree kidnapping with a firearm, a class B felony under Washington law. *Blakely,* 542 U.S. at 298-299, 124 S. Ct. 2531, 159 L. Ed. 2d 403. While the overall statutory maximum for a class B felony was ten years, the State's Sentencing Reform Act (Reform Act) added an important qualification: If [*25] no facts beyond those reflected in the jury's verdict were found by the trial judge, a defendant could not receive a sentence above a "standard range" of 49 to 53 months. *Id.,* at 299-300, 124 S. Ct. 2531, 159 L. Ed. 2d 403. The Reform Act permitted but did not require a judge to exceed that standard range if she found "substantial and compelling reasons justifying an exceptional sentence." *Ibid.* (quoting Wash. Rev. Code Ann. § 9.94A.120(2) (2000)). The Reform Act set out a nonexhaustive list of aggravating facts on which such a sentence elevation could be based. It also clarified that a fact taken into account in fixing the standard range -- *i.e.,* any fact found by the jury -- could under no circumstances count in the determination whether to impose an exceptional sentence. 542 U.S. at 299-300, 124 S. Ct. 2531, 159 L. Ed. 2d 403. Blakely was sentenced to 90 months' imprisonment, more than three years above the standard range, based on the trial judge's finding that he had acted with deliberate cruelty. *Id.,* at 300, 124 S. Ct. 2531, 159 L. Ed. 2d 403.

Applying the rule of *Apprendi,* this Court held Blakely's sentence unconstitutional. The State in *Blakely* had endeavored to distinguish *Apprendi* on the ground that "under [*26] the Washington guidelines, an exceptional sentence is within the court's discretion as a result of a guilty verdict." Brief for Respondent in *Blakely v. Washington,* O.T. 2003, No. 02-1632, p. 15. We rejected that argument. The judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty. Consequently, that fact was subject to the Sixth Amendment's jury-trial guarantee. 542 U.S. at 304-314, 124 S. Ct. 2531, 159 L. Ed. 2d 403. It did not matter, we explained, that Blakely's sentence, though outside the standard range, was within the 10-year maximum for class B felonies:

"Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* . . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any additional findings.* When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential [*27] to the punishment,' . . . and the judge exceeds his proper authority." *Id.,* at 303-304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original) (quoting 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872)).

Because the judge in Blakely's case could not have imposed a sentence outside the standard range without finding an additional fact, the top of the standard range -- 53 months, and not 10 years -- was the relevant statutory maximum. 542 U.S. at 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403.

The State had additionally argued in *Blakely* that *Apprendi's* rule was satisfied because Washington's Reform Act did not specify an exclusive catalog of potential facts on which a judge might base a departure from the standard range. This Court rejected that argument as well, "whether the judge's authority to impose an enhanced sentence depends on finding a specified fact . . . , one of several specified facts . . . , or any aggravating fact (as here)," we observed, "it remains the case that the jury's verdict alone does not authorize the sentence. 542 U.S., at 305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original). Further, we held it irrelevant that the judicially determined facts *require* a court to the judge's discretion. [*28] "Whether the judicially determined facts *require* a departure or merely *allow* it," we noted, "the verdict alone does not authorize the sentence." *Ibid.,* n. 8 (emphasis in original).

Freddie Booker was convicted of possession with intent to distribute crack cocaine and was sentenced under the Federal Sentencing Guidelines. The facts found by Booker's jury yielded a base Guidelines range of 210 to 262 months' imprisonment, a range the judge could not exceed without undertaking additional factfinding. *Booker,* 543 U.S. at 227, 233-234, 125 S. Ct. 738, 160 L. Ed. 2d 621. The judge did so, finding by a preponderance of the evidence that Booker possessed an amount of drugs in excess of the amount determined by the jury's verdict. That finding boosted Booker into a higher Guidelines range. Booker was sentenced to the bottom of the higher range, to 360 months in prison. *Id.,* at 227, 125 S. Ct. 738, 160 L. Ed. 2d 621.

In an opinion written by JUSTICE STEVENS for a five-Member majority, the Court held Booker's sentence impermissible under the Sixth Amendment. In the majority's judgment there was "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington [*29] procedures at issue in [*Blakely*]." *Id.,* at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. Both systems were "mandatory and imposed binding requirements on all sentencing judges." *Ibid.* n10 JUSTICE STEVENS' opinion for the Court bears emphasis, next expressed a view on which there was no disagreement among the Justices, he acknowledged that the Federal Guidelines would not implicate the Sixth Amendment were they advisory:

"If the Guidelines as currently written could be read as merely advisory provisions that recommend, rather than require, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by [this case] would have been avoided entirely if Congress had omitted from the [Federal Sentencing Reform Act] the provisions that make the Guidelines binding on district judges . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination [*30] of the facts that the judge deems relevant.

"The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges." *Ibid.* (citations omitted).

Get a Document - by Citation - 2007 U.S. LEXIS 1324

opinion for the Court observed: "Section 3553(a) remains in effect, and sets forth numer factors that guide sentencing. Those factors in turn will guide appellate courts, as they in the past, in determining whether a sentence is reasonable." *Ibid.* n13 The Court emphasized the provisional character of the *Booker* remedy, recognizing that authority speak "the last word" resides in Congress, the [\*33] Court said:

> "The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice." *Id.,* at 265, 125 S. Ct. 738, 160 L. Ed. 2d 621.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Section 3553(a) instructs sentencing judges to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentence available," and the Guidelines and policy statements issued by the United States Sentencing Commission, § 3553(a)(1), (3)-(5). Avoidance of unwarranted sentencing disparities, and need to provide restitution, are also listed as concerns to which the judge should respond. § 3553(a)(6)-(7).

In a further enumeration, § 3553(a) calls for the imposition of "a sentence sufficient, but not greater than necessary" to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the treatment with needed educational or vocational training, medical care, or other correction treatment in the most effective manner." § 3553(a)(2). [\*34]

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - -

n13 While this case does not call for elaboration of the reasonableness check on federal sentencing post-*Booker*, we note that the Court has granted review in two cases raising questions trained on that matter: *Claiborne v. United States,* 127 S. Ct. 551, 166 L. Ed. 2d 406 (cert. granted Nov. 3, 2006); and *Rita v. United States,* 127 S. Ct. 551, 166 L. Ed. 2d 406 (cert. granted Nov. 3, 2006). In *Claiborne,* the Court will consider whether it is consistent with the advisory cast of the Guidelines system post-*Booker* to require that extraordinary circumstances attend a sentence varying substantially from the Guidelines. *Rita* includes the question whether is it consistent with *Booker* to accord a presumption of reasonableness to a within-Guidelines sentence.

In this regard, we note JUSTICE ALITO's view that California's DSL is essentially the same, as post-*Booker* federal sentencing. *Post,* at 1-10. To maintain that position, his dissent previews, without benefit of briefing or argument, how "reasonableness review," post-*Booker,* works. *Post,* at 13-15. It is neither necessary nor proper now to join issue with JUSTICE ALITO on this matter.

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - - [\*35]

We turn now to the instant case in light of both parts of the Court's *Booker* opinion, and our earlier decisions in point.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 California's DSL, we note in this context, resembles pre-*Booker* federal sentencing in the same ways Washington's sentencing system did: The key California Penal Code provision states that the sentencing court "*shall order* imposition of the middle term" absent "circumstances in aggravation or mitigation of the crime," § 1170(b) (emphasis added), and any move to the upper or lower term must be justified by "a concise statement of the *ultimate facts*" on which the departure rests, Rule 4.420(e) (emphasis added). But see *post,* at 7 (ALITO, J., dissenting) (characterizing California's DSL as indistinguishable from post-*Booker* sentencing).

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - -

In an opinion written by JUSTICE BREYER, also garnering a five-Member majority, the Court faced the remedial question, which turned on an assessment of legislative intent: What [\*31] alteration would Congress have intended had it known that the Guidelines were vulnerable to a Sixth Amendment challenge? Three choices were apparent: the Court could invalidate in its entirety the Sentencing Reform Act of 1984 (SRA), the law comprehensively delineating the federal sentencing system; or it could preserve the SRA, and the mandatory Guidelines regime the SRA established, by attaching a jury-trial requirement to any fact increasing a defendant's base Guidelines range; finally, the Court could render the Guidelines advisory by severing two provisions of the SRA, 18 U.S.C. § 3553(b)(1) and 3742(e) (2000 ed. and Supp. IV), 543 U.S., at 246-249, 125 S. Ct. 738, 160 L. Ed. 2d 621. n11 Recognizing that "reasonable minds can, and do, differ" on the remedial question, the majority concluded that the advisory Guidelines solution came closest to the congressional mark. *Id., at 248-258, 125 S. Ct. 738, 160 L. Ed. 2d 621.*

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Title 18 U.S.C. § 3553(b)(1) mandated the imposition of a Guidelines sentence unless the district court found "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Section 3742(e) directed the court of appeals to determine, *inter alia,* whether the district court correctly applied the Guidelines, § 3742(e)(2), and, if the sentence imposed fell outside the applicable Guidelines range, whether the sentencing judge had provided a written statement of reasons, whether § 3553(b) and the facts of the case warranted the departure, and whether the degree of departure was reasonable, § 3742(e)(3).

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - - [\*32]

Under the system described in JUSTICE BREYER's opinion for the Court in *Booker,* judges would no longer be tied to the sentencing range indicated in the Guidelines. But they would be obliged to "take account of" that range along with the sentencing goals Congress enumerated in the SRA at 18 U.S.C. § 3553(a). 543 U.S., at 259, 264, 125 S. Ct. 738, 160 L. Ed. 2d 621. n12 Having severed § 3742(e), the provision of the SRA governing appellate review of sentences under the mandatory Guidelines scheme, see *supra,* at 13, and n. 11, the Court installed, as consistent with the Act and the sound administration of justice, a "reasonableness" standard of review. 543 U.S., at 261, 125 S. Ct. 738, 160 L. Ed. 2d 621. Without attempting an elaborate discussion of that standard, JUSTICE BREYER's remedial

Under California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. See supra, at 4-5. An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. See supra, at 5-6. Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with Blakely, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. 542 U.S., at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 ('The 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, see supra, at 5, the DSL violates Apprendi's bright-line rule: Except [*36] for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S., at 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435.

While 'that should be the end of the matter,' Blakely, 542 U.S., at 313, 124 S. Ct. 2531, 159 L. Ed. 2d 403, in People v. Black, the California Supreme Court held otherwise. In that court's view, the DSL survived Apprendi and our precedent intact. See 35 Cal. 4th, at 1254-1261, 113 P. 3d, at 543-548. The Black court acknowledged that California's system appears on surface inspection to be in tension with the rule of Apprendi. But in 'operation and effect,' the court said, the DSL 'simply authorizes a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range.' 35 Cal. 4th, at 1254, 113 P. 3d, at 543. Therefore, the court concluded, 'the upper term is the 'statutory maximum'' and a trial court's imposition of an upper term sentence does not violate a defendant's right to a jury trial under the principles set forth in [*37] Apprendi, Blakely, and Booker.' Ibid. But see id., at 1220, 113 P. 3d, at 554 (Kennard, J., concurring and dissenting) ('Nothing in the high court's majority opinions in Apprendi, Blakely, and Booker suggests that the constitutionality of a state's sentencing scheme turns on whether, in the words of the majority here, it involves the type of factfinding 'that traditionally has been performed by a judge.'' (quoting id., at 1253, 113 P. 3d, at 542))).

The Black court's conclusion that the upper term, and not the middle term, qualifies as the relevant statutory maximum, rested on several considerations. First, the court reasoned that, given the ample discretion afforded trial judges to identify aggravating facts warranting an upper term sentence, the DSL

> "does not represent a legislative effort to shift the proof of particular facts from elements of a crime (to be proved to a jury) to sentencing factors (to be decided by a judge). . . . Instead, it afforded the sentencing judge the discretion to decide the facts of the case and decide, with the guidance of rules and statutes, whether the history of the defendant justify [*38] the higher sentence. Such a system does not diminish the traditional power of the jury." Id., at 1256, 113 P. 3d, at 544 (footnote omitted).

We cautioned in Blakely, however, that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

The Black court also urged that the DSL is not cause for concern because it reduced the penalties for most crimes over the prior indeterminate sentencing regime. 35 Cal. 4th, at 1256-1258, 113 P. 3d, at 544-545. But see id., at 1271-1272, 113 P. 3d, at 555 (Kennard, J., concurring and dissenting) ('This aspect of our sentencing law does not differ significantly from the Washington sentencing scheme [the high court invalidated in Blakely].'); supra, at 10. Furthermore, California's [*39] system is not unfair to defendants, for they 'cannot reasonably expect a guarantee that the upper term will not be imposed' given judges' broad discretion to impose an upper term sentence or to keep their punishment at the middle term. 35 Cal. 4th, at 1258-1259, 113 P. 3d, at 545-546. The Black court additionally noted that the DSL requires statutory enhancements (as distinguished from aggravators) -- e.g., the use of a firearm or other dangerous weapon, infliction of great bodily injury, Penal Code §§ 12022, 12022.7-.8 (West 2000 and Supp. 2006) -- to be charged in the indictment and proved to a jury beyond a reasonable doubt. 35 Cal. 4th, at 1257, 113 P. 3d, at 545.

The Black court's examination of the DSL, in short, satisfied it that California's sentencing system does not implicate significantly the concerns underlying the Sixth Amendment's jury-trial guarantee. Our decisions, however, leave no room for such an examination. Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the very inquiry Apprendi's 'bright-line [*40] rule' was designed to exclude. See Blakely, 542 U.S., at 307-308, 124 S. Ct. 2531, 159 L. Ed. 2d 403. But see Black, 35 Cal. 4th, at 1260, 113 P. 3d, at 542 (stating, remarkably, that 'the high court precedents do not draw a bright line'). n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 JUSTICE KENNEDY urges a distinction between facts concerning the offense, where Apprendi would apply, and facts concerning the offender, where it would not. Post, at 1-2 (dissenting opinion). Apprendi itself, however, leaves no room for the bifurcated approach JUSTICE KENNEDY proposes. See 530 U.S., at 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 ('Any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (emphasis added)).

- - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Ultimately, the Black court relied on an equation of California's DSL system to the post-Booker federal system. 'The level of discretion available to a California judge in selecting which of the three available terms to impose,' the court said, 'appears comparable [*41] to the level of discretion that the high court has chosen to permit federal judges in post-Booker sentencing.' 35 Cal. 4th, at 1261, 113 P. 3d, at 548. The same equation drives JUSTICE ALITO's dissent. See post, at 1 ('The California sentencing law . . . is indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved in [Booker].').

The attempted comparison is unavailing. As earlier explained, see supra, at 12-13, this Court in Booker held the Federal Sentencing Guidelines incompatible with the Sixth Amendment because the Guidelines were 'mandatory and imposed binding requirements on all sentencing judges.' 543 U.S., at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. 'Merely advisory provisions,' recommending but not requiring 'the selection of particular sentences in response to differing sets of facts,' all Members of the Court agreed, 'would not implicate the Sixth Amendment.' Ibid. To remedy the constitutional infirmity found in Booker, the Court's majority excised provisions that rendered the system mandatory, leaving the Guidelines in place as advisory only. Id., at 245-246, 125 S. Ct. 738, 160 L. Ed. 2d 621. See also [*42] supra, at 13-14.

with this Court's Sixth Amendment precedent. See 35 Cal. 4th, at 1273, 113 P. 3d, at 555-556 (Kennard, J., concurring and dissenting). Rather, it construed this Court's decisions in an endeavor to render them consistent with California law. The Black court's interpretation of federal constitutional law plainly does not qualify for this Court's deference.

- - - - - - - - - - End Footnotes - - - - - - - - - - [*45]

IV

As to the adjustment of California's sentencing system in light of our decision, "the ball . . . lies in [California's] court." Booker, 543 U.S., at 265, 125 S. Ct. 738, 160 L. Ed. 2d 621; cf. supra, at 15. We note that several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing. They have done so by calling upon the jury -- either at trial or in a separate sentencing proceeding -- to find any fact necessary to the imposition of an elevated sentence. n17 As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. See supra, at 7, 18. Other States have chosen to permit judges genuinely "to exercise broad discretion . . . within a statutory range," n18 which, "everyone agrees," encounters no Sixth Amendment shoal. Booker, 543 U.S., at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions.

- - - - - - - - - - Footnotes - - - - - - - - - -

n17 States that have so altered their systems are Alaska, Arizona, Kansas, Minnesota, North Carolina, Oregon, and Washington. Alaska Stat. §§ 12.55.155(f), 12.55.155(d) (2004); Ariz. Rev. Stat. Ann. § 13-702.01 (West Supp. 2006); Kan. Stat. Ann. §§ 21-4716(b), 21-4718(b) (2005 Supp.); Minn. Stat. § 244.10, subd. 5 (2005 Supp.); N.C. Gen. Stat. Ann. § 15A-1340.16(a1) (Lexis 2005); 2005 Ore. Sess. Laws, ch. 463, §§ 3(1), 4(1); Wash. Rev. Code §§ 9.94A.535, 9.94A.537 (2006). The Colorado Supreme Court has adopted this approach as an interim solution. Lopez v. People, 113 P. 3d 713, 716 (Colo. 2005) (en banc). See also Stenen & Wilhelm, Finding the Jury: State Legislative Responses to Blakely v. Washington, 18 Fed. Sentencing Rptr. 7 (Oct. 2005) (majority of affected States have retained determinate sentencing systems). [*46]

n18 See Ind. Code Ann. § 35-50-2-1.3(a) (West 2006); Tenn. Code Ann. § 40-35-210(c) (2005 Supp.).

- - - - - - - - - - End Footnotes - - - - - - - - - -

* * *

For the reasons stated, the judgment of the California Court of Appeal is reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

DISSENT BY: KENNEDY; ALITO

DISSENT: JUSTICE KENNEDY, with whom JUSTICE BREYER joins, dissenting.

---

California's DSL does not resemble the advisory system the Booker Court had in view. Under California's system, judges are not free to exercise their discretion to select a specific sentence within a defined range." Booker, 543 U.S., at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.

Nevertheless, the Black court attempted to rescue the DSL's judicial factfinding authority by typing it simply a reasonableness constraint, equivalent to the constraint operative in the federal system post-Booker. See 35 Cal. 4th, at 1261, 113 P. 3d, at 548 ("Because an aggravating [*43] factor under California law may include any factor that the judge reasonably deems relevant, the [DSL's] requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to Booker's requirement that a federal judge's sentencing decision not be unreasonable."). Reasonableness, however, is not, as the Black court would have it, the touchstone of Sixth Amendment analysis. The reasonableness requirement Booker anticipated for the federal system operates within the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints. Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. Booker's remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless. n15

- - - - - - - - - - Footnotes - - - - - - - - - -

n15 JUSTICE ALITO, however, would do just that. His opinion reads the remedial portion of the Court's opinion in Booker to override Blakely, and to render academic the entire first part of Booker itself. Post, at 13-15. There would have been no majority in Booker for the revision of Blakely essayed in his dissent. Grounded in a notion of how federal reasonableness review operates in practice, JUSTICE ALITO "necessarily anticipates" a question that will be aired later this Term in Rita and Claiborne. See supra, at 14, n. 13. While we do not forecast the Court's responses in those cases, we affirm the continuing vitality of our prior decisions in point.

- - - - - - - - - - End Footnotes - - - - - - - - - - [*44]

To summarize: Contrary to the Black court's holding, our decisions from Apprendi to Booker point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent. n16

- - - - - - - - - - Footnotes - - - - - - - - - -

n16 Respondent and its amici argue that whatever this Court makes of California's sentencing law, the Black court's "construction" of that law as consistent with the Sixth Amendment is authoritative. Brief for Respondent 6, 18, 33; Brief for Hawaii et al. as Amici Curiae 17, 29. We disagree. The Black court did not modify California law so as to align it

The dissenting opinion by JUSTICE ALITO, which I join in full, well explains why the Court continues in a wrong and unfortunate direction in the cases following *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). See, e.g., *United States v. Booker*, 543 U.S. 220, 326-336, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (BREYER, J., dissenting in part); *Blakely v. Washington*, 542 U.S. 296, 314-324, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (O'Connor, J., dissenting); *Id.*, at 326-338, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (KENNEDY, J., dissenting); see also *Apprendi, supra*, at 523-554, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (O'Connor, J., dissenting); *Jones v. United States*, 526 U.S. 227, 264-272, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (KENNEDY, J., dissenting). The discussion in his dissenting [*47] opinion is fully sufficient to show why, in my respectful view, the Court's analysis and holding are mistaken. It does seem appropriate to add this brief, further comment.

In my view the *Apprendi* line of cases remains incorrect. Yet there may be a principled rationale permitting those cases to control within the central sphere of their concern, while reducing the collateral, widespread harm to the criminal justice system and the corrections process now resulting from the Court's wooden, unyielding insistence on expanding the *Apprendi* doctrine far beyond its necessary boundaries. The Court could distinguish between sentencing enhancements based on the nature of the offense, where the *Apprendi* principle would apply, and sentencing enhancements based on the nature of the offender, where it would not. California attempted to make this initial distinction. Compare Cal. Penal Code Ann. § 4.421(a) (Criminal Cases) (West 2006) (listing aggravating "facts relating to the crime"), with Rule 4.421(b) (listing aggravating "facts relating to the defendant"). The Court should not foreclose this option.

California, as the Court notes, experimented earlier with an indeterminate sentencing [*48] system. *Ante*, at 3. The State reposed vast power and discretion in a nonjudicial agency to set a release date for convicted felons. That system, it seems, would have been untouched by *Apprendi*. When the State sought to reform its system, it might have chosen to give its judges the authority to sentence to a maximum but to depart downward for unexplained reasons. That too, by considerable irony, would be untouched by *Apprendi*. Instead, California sought to use a system based on guided discretion. *Apprendi*, the Court holds today, forecloses this option.

As dissenting opinions have suggested before, the Constitution ought not to be interpreted to strike down all aspects of sentencing systems that grant judicial discretion with some legislative direction and control. Judges and legislators must have the capacity to develop consistent standards, standards that individual juries empaneled for only a short time cannot elaborate in any permanent way. See, e.g., *Blakely*, 542 U.S., at 314, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (opinion of O'Connor, J.); *Id.*, at 326-327, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (opinion of KENNEDY, J.) (explaining that "sentencing guidelines are a prime example of [the] collaborative process" [*49] between courts and legislators). Judges and sentencing officials have a broad view and long-term commitment to correctional systems. Juries do not. Judicial officers and corrections professionals, under the guidance and control of the legislature, should be encouraged to participate in an ongoing manner to improve the various sentencing schemes in our country.

This system of guided discretion would be permitted to a large extent if the Court confined the *Apprendi* rule to sentencing enhancements based on the nature of the offense. These would include, for example, the fact that a weapon was used; violence was employed; a stated amount of drugs or other contraband was involved; or the crime was motivated by the victim's race, gender, or other status protected by statute. Juries could consider these matters without serious disruption because these factors often are part of the statutory definition of an aggravated crime in any event and because the evidence to support these enhancements is likely to be a central part of the prosecution's case.

On the other hand, judicial determination is appropriate with regard to factors exhibited by the defendant. These would include, for example, [*50] prior convictions; cooperation or noncooperation with law enforcement; remorse or the lack of it; or other aspects of the defendant's history bearing upon his background and contribution to the community. This is so even if the relevant facts were to be found by the judge by a preponderance of the evidence. These are facts that should be taken into account at sentencing but have little if any significance for whether the defendant committed the crime. See Berman & Bibas, Making Sentencing Sensible, 4 Ohio St. J. Crim. L. 37, 55-57 (2006).

The line between offense and offender would not always be clear, but in most instances the nature of the offense is defined in a manner that ensures the problem of categories would not be difficult. *Apprendi* suffers from a similar line-drawing problem between facts that must be considered by the jury and other considerations that a judge can take into account. The main part of the Court's decision today appears to foreclose consideration of this approach or other reasonable efforts to develop systems of guided discretion within [*51] the general constraint that *Apprendi* imposes.

JUSTICE ALITO, with whom JUSTICE KENNEDY and JUSTICE BREYER join, dissenting.

The California sentencing law that the Court strikes down today is indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Both sentencing schemes grant trial judges considerable discretion in sentencing; both subject the exercise of that discretion to appellate review for "reasonableness"; and both -- the California law explicitly, and the federal scheme implicitly -- require a sentencing judge to find some factor to justify a sentence above the minimum that could be imposed based solely on the jury's verdict. Because this Court has held unequivocally that the post-*Booker* federal sentencing system satisfies the requirements of the Sixth Amendment, the same should be true with regard to the California system. I therefore respectfully dissent.

I

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and the cases that have followed in its wake, the Court has held that under certain circumstances a criminal [*52] defendant possesses the Sixth Amendment right to have a jury find facts that result in an increased sentence. The Court, however, has never suggested that all factual findings that affect a defendant's sentence must be made by a jury. On the contrary, in *Apprendi* and later cases, the Court has consistently stated that when a trial court makes a fully discretionary sentencing decision (such as a sentencing decision under the pre-Sentencing Reform Act of 1984 federal sentencing system), the Sixth Amendment permits the court to base the sentence on its own factual findings. See *id.*, at 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435; *Blakely, supra*, at 233, 125 S. Ct. 2531, 159 L. Ed. 2d 621; see also *Harris v. United States*, 536 U.S. 545, 558, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 The Court's recognition of this is hardly surprising since, as Judge McConnell has pointed out, "fully discretionary sentencing . . . was the system [that was] in place when the Sixth Amendment was adopted" and that "prevailed in the federal courts from the Founding until enactment of the Sentencing Reform Act of 1984 . . . without anyone ever suggesting a conflict with the Sixth Amendment." McConnell, The Booker Mess, 83 Denver U. L. Rev. 665, 679 (2006). Indeed, the original federal criminal statute enacted by the First Congress set forth indeterminate sentencing ranges for a variety of offenses, leaving the determination of

the precise sentence to the judge's discretion. See, e.g., Act of Apr. 30, 1790, ch. 9, § 2, 1 Stat. 112 (crime of misprision of treason punishable by imprisonment not exceeding seven years and fine not exceeding $ 1,000); § 6, id., at 113 (crime of misprision of a felony punishable by imprisonment not exceeding three years and fine not exceeding $ 500); § 15, id., at 115-116 (crime of falsifying federal records punishable by imprisonment not exceeding seven years, fine not exceeding $ 5,000, and whipping not exceeding 39 stripes); see generally Little & Chen, The Lost History of Apprendi and the Blakely Petition for Rehearing, 17 Fed. Sentencing Rep. 69 (2004).

- - - - - - - - - - End Footnotes- - - - - - - - - - [*53].

Applying this rule, the Booker Court unanimously agreed that judicial factfinding under a purely advisory guidelines system would likewise comport with the Sixth Amendment. Writing for the five Justices who struck down the mandatory Federal Sentencing Guidelines system, JUSTICE STEVENS stated:

"If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, supra, at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621. n2

- - - - - - - - - - Footnotes - - - - - - - - - -

n2 The four Justices who would have upheld the constitutionality of the mandatory Federal Sentencing Guidelines system did not, of course, disagree with this basic point. Indeed, they were of the view that "history does not support a right to jury trial in respect to sentencing facts." Booker, 543 U.S., at 326, 125 S. Ct. 738, 160 L. Ed. 2d 621 (BREYER, J., dissenting in part).

- - - - - - - - - - End Footnotes- - - - - - - - - - [*54]

In a similar vein, the remedial portion of the Court's opinion in Booker, written by JUSTICE BREYER, held that the Sixth Amendment permits a system of advisory guidelines with reasonableness review. n3 JUSTICE BREYER's opinion avoided a blanket invalidation of the Guidelines by excising the provision of the Sentencing Reform Act, 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), that required a sentencing judge to impose a sentence within the applicable Guidelines range. See Booker, 543 U.S., at 259, 125 S. Ct. 738, 160 L. Ed. 2d 621. As JUSTICE BREYER explained, "the existence of § 3553(b)(1) is a necessary condition of the constitutional violation. That is to say, without this provision . . . the statute falls outside the scope of Apprendi's requirement." Ibid.

- - - - - - - - - - Footnotes - - - - - - - - - -

n3 while the dissenters from the remedial portion of the Court's opinion disagreed with JUSTICE BREYER's severability analysis, they did not suggest that the resulting "advisory Guidelines" structure was unconstitutional. Rather, they recognized -- as JUSTICE STEVENS explained in his portion of the Court's opinion -- that "if the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." Id., at 233, 125 S. Ct. 738, 160 L. Ed. 2d 621.

- - - - - - - - - - End Footnotes- - - - - - - - - - [*55].

Under the post-Booker federal sentencing system, "the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id., at 264, 125 S. Ct. 738, 160 L. Ed. 2d 621. In addition, sentencing courts must take account of the general sentencing goals set forth by Congress, including avoiding unwarranted sentencing disparities, providing restitution to victims, reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and effectively providing the defendant with needed educational or vocational training and medical care. See id., at 260, 125 S. Ct. 738, 160 L. Ed. 2d 621 (citing 18 U.S.C. § 3553(a)(2000 ed. and Supp. IV)).

It is significant that Booker, while rendering the Guidelines advisory, did not reinstitute the pre-Guidelines federal sentencing system, under which "well-established doctrine barred review of the exercise of sentencing discretion" within the broad sentencing ranges imposed by the criminal statutes. Dorszynski v. United States, 418 U.S. 424, 443, 94 S. Ct. 3042, 41 L. Ed. 2d 855 (1974). Rather, Booker conditioned [*56] a district court's sentencing discretion on appellate review for "reasonableness" in light of the Guidelines and the § 3553(a) factors. See Booker, supra, at 261, 125 S. Ct. 738, 160 L. Ed. 2d 621 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable").

Although the Booker Court did not spell out in detail how sentencing judges are to proceed under the new advisory Guidelines regime, it seems clear that this regime permits -- and, indeed, requires -- sentencing judges to make factual findings and to base their sentences on those findings. The federal criminal statutes generally set out wide sentencing ranges, and thus in each case a sentencing judge must use some criteria in selecting the sentence to be imposed. In doing this, federal judges have generally made and relied upon factual determinations about the nature of the offense and the offender -- and it is impossible to imagine how federal judges could reasonably carry out their sentencing responsibilities without making such factual determinations.

Under the mandatory Federal [*57] Sentencing Guidelines regime, these factual determinations were relatively formal and precise. (For example, a trial judge under that regime might have found based on a post-trial proceeding that a drug offense involved six kilograms of cocaine or that the loss caused by a mail fraud offense was $ 2.5 million.) By contrast, under the new advisory Guidelines regime, the factual determinations were often relatively informal and imprecise. (A trial judge might have concluded from the presentence report that an offense involved "a large quantity of drugs" or that a mail fraud scheme caused "a great loss.") Under both systems, however, the judges made factual determinations about the nature of the offense and the offender and determined the sentence accordingly. And as the Courts of Appeals have unanimously concluded, the post-Booker federal sentencing regime also permits trial judges to make such factual findings and to rely on those findings in selecting the sentences that are appropriate in particular cases. n4

does the post-Booker federal scheme. California's system of sentencing triads and separate "enhancements" n5 was enacted to achieve sentences "in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion." Cal. Penal Code Ann. § 1170(a)(1) (West Supp. 2006). This "specified discretion" is quite broad. Under the statute, a sentencing court "shall order imposition of the middle term" of the base-term triad, "unless there are circumstances in aggravation or mitigation of the crime." § 1170(b). While the court may not rely on any fact that is an essential element of the crime or of a proven enhancement, the "sentencing judge retains considerable discretion to identify aggravating factors." People v. Black, 35 Cal. 4th 1238, 1247, 29 Cal. Rptr.3d 740, 113 P. 3d 534, 538 (2005).

- - - - - - - - - - Footnotes - - - - - - - - - -

n5 These enhancements, which add additional years onto the base-term selected by the court, see ante, at 7-8, must be pleaded and proved to a jury beyond a reasonable doubt. They are not at issue in this case.

- - - - - - - - - - End Footnotes - - - - - - - - - - [*61]

In exercising its sentencing discretion, a California court can look to any of the 16 specific aggravating circumstances, see Cal. Rule of Court (Criminal Cases) 4.421 (West 2006), or 15 specific mitigating circumstances, see Rule 4.423, itemized in the California Rules of Court. A California trial court can also consider the "general objectives of sentencing," including protecting society, punishing the defendant, encouraging the defendant to lead a law-abiding life and deterring the defendant from committing future offenses, deterring others from criminal conduct by demonstrating its consequences, preventing the defendant from committing new crimes by means of incarceration, securing restitution for crime victims, and achieving uniformity in sentencing. n6 Rule 4.410(a). And if a California trial court finds that its sentencing authority is unduly restricted by these factors, which the California Supreme Court has recognized "are largely the articulation of considerations sentencing judges have always used in making these decisions," People v. Hernandez, 46 Cal.3d 194, 205, 249 Cal. Rptr. 850, 257 P.2d 1013, 1019, (1988) (in bank), overruled on other grounds, People v. King, 5 Cal. 4th 59, 78 n. 5, 19 Cal. Rptr. 2d 233, 851 P.2d 27, 39, n. 5 (1993) [*62] (in banc), a California sentencing judge is also authorized to consider any "additional criteria reasonably related to the decision being made." Rule 4.408(a); see also Black, supra, at 1256, 113 P. 3d, at 544 ("The Legislature did not identify all of the particular facts that could justify the upper term"). n7

- - - - - - - - - - Footnotes - - - - - - - - - -

n6 These factors are similar to the federal sentencing policies set forth in 18 U.S.C. § 3553 (a)(2000 ed. and Supp. IV), which directs a court to consider, among other things, the need to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public.

n7 As the California Supreme Court explained in Black,

"In adopting the sentencing rules, the Judicial Council considered and rejected proposals that the rules provide an exclusive list of sentencing criteria and that the criteria be assigned specific weights, on the ground that the Legislature intended to give the sentencing judge discretion in selecting among the lower, middle, and upper terms. The report on which the Judicial Council acted in adopting the rules explains that 'an exclusive listing would be

- - - - - - - - - - Footnotes - - - - - - - - - -

n4 Every Court of Appeals to address the issue has held that a district court sentencing post-Booker may rely on facts found by the judge by a preponderance of the evidence. See United States v. Kilby, 443 F.3d 1135, 1141 (CA9 2006); United States v. Cooper, 437 F.3d 324, 330 (CA3 2006); United States v. Price, 418 F.3d 771, 788 (CA7 2005); United States v. Magallanez, 408 F.3d 672, 684-685 (CA10 2005); United States v. Pirani, 406 F.3d 543, 551, n. 4 (CA8 2005) (en banc); United States v. Yagar, 404 F.3d 967, 972 (CA6 2005); United States v. Mares, 402 F.3d 511, 519, and n. 6 (CA5 2005); United States v. Duncan, 400 F.3d 1297, 1304-1305 (CA11 2005); United States v. Antonakopoulos, 399 F.3d 68, 74 (CA1 2005).

- - - - - - - - - - End Footnotes - - - - - - - - - - [*58]

Under the post-Booker system, if a defendant believes that his or her sentence was based on an erroneous factual determination, it seems clear that the defendant may challenge that finding on appeal. As noted, the post-Booker system permits a defendant to obtain appellate review of the reasonableness of a sentence, and a sentence that the sentencing court justifies solely on the basis of an erroneous finding of fact can hardly be regarded as reasonable. Thus, under the post-Booker system, there will be cases -- and, in all likelihood, a good many cases -- in which the question whether a defendant will be required to serve a greater or lesser sentence depends on whether a court of appeals sustains a finding of fact made by the sentencing judge.

A simple example illustrates this point. Suppose that a defendant is found guilty of 10 counts of mail fraud in that the defendant made 10 mailings in furtherance of a scheme to defraud. See 18 U.S.C. § 1341 (2000 ed., Supp. IV). Under the mail fraud statute, the district court would have discretion to sentence the defendant to any sentence ranging from probation up to 50 years of imprisonment (5 years on [*59] each count). Suppose that the sentencing judge imposes the maximum sentence allowed by statute -- 50 years of imprisonment -- without identifying a single fact about the offense or the offender as a justification for this lengthy sentence. Surely that would be an unreasonable sentence that could not be sustained on appeal.

Suppose, alternatively, that the sentencing court finds that the mail fraud scheme caused a loss of $ 1 million and that the victims were elderly people of limited means, and suppose that the court, based on these findings, imposes a sentence of 10 years of imprisonment. If the defendant challenges the sentence on appeal on the ground that these findings are erroneous, the question whether the defendant will be required to serve 10 years or some lesser sentence may well depend on the validity of the district court's findings of fact.

Booker, then, approved a sentencing system that (1) requires a sentencing judge to "consult" and "take into account" legislatively defined sentencing factors and guidelines; (2) subjects a sentencing judge's exercise of sentencing discretion to appellate review for "reasonableness"; and (3) requires sentencing judges to make factual [*60] findings in order to support the exercise of this discretion.

II

The California sentencing law that the Court strikes down today is not meaningfully different from the federal scheme upheld in Booker.

As an initial matter, the California law gives a judge at least as much sentencing discretion as

inconsistent with the statutory mandate to adopt 'rules providing criteria for the consideration of the trial judge' [§ 1170.3] since this language does not purport to limit the discretion afforded the court in each of the five enumerated sentencing decisions, but calls for criteria which will assist the courts in the exercise of that discretion.' (Judicial Council of Cal., Advisory Com. Rep., Sentencing Rules and Sentencing Reporting System (1977) p. 6.) 'Any attempt to impose a weighting system on trial courts . . . would be an infringement on the sentencing power of the court.' (Id., p. 8.) 'The rules can guide, but cannot compel, the exercise of that discretion.' (Id., p. 11.) 35 Cal.4th at 1256, n. 11, 113 P.3d at 544, n. 11.

- - - - - - - - - End Footnotes - - - - - - - - - -

[*63]

In short, under California law, the "circumstances" the sentencing judge may look to in aggravation or in mitigation of the crime include . . . "practically everything which has a legitimate bearing' on the matter in issue." People v. Guevara, 88 Cal.App.3d 86, 93, 151 Cal.Rptr. 511, 516 (1979); see also Rule 4.410(b) ("The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."). Indeed, as one California court has explained, sentencing discretion may even be guided by a "judge's subjective determination of . . . the appropriate aggregate sentence based on his 'experiences with prior cases and the . . . record in the defendant's case.' People v. Stevens, 205 Cal.App.3d 1452, 1457, 251 Cal.Rptr. 173, 177 (1988). "A judge's subjective belief regarding the length of the sentence to be imposed is not improper as long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria." Ibid.

The California scheme -- like the federal "advisory Guidelines" -- does require that this discretion be exercised reasonably. Indeed, [*64] the California Supreme Court, authoritatively construing the California statute, n8 has explained that § 1170(b)'s "requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be reasonable." Black, 35 Cal.4th at 1255, 113 P.3d at 544 (emphasis in original); see also id., at 1257-1258, 113 P.3d at 545 ("The jury's verdict of guilty on an offense authorizes the judge to sentence a defendant to any of the three terms specified by statute as the potential punishments for that offense, as long as the judge exercises his or her discretion in a reasonable manner that is consistent with the requirements and guidelines contained in statutes and court rules"). Even when a court imposes the "presumptive" middle term, its decision is reviewable for abuse of discretion -- that is, its decision to sentence at the "standard" term must be reasonable. See People v. Cattaneo, 217 Cal.App.3d 1577, 1587-1588, 266 Cal.Rptr. 710, 716 (1990).

- - - - - - - - - - - Footnotes - - - - - - - - - - -

n8 The Court correctly notes that we need not defer to the California Supreme Court's construction of federal law, including its judgment as to whether California law is consistent with our Sixth Amendment jurisprudence. See ante, at 21, n. 16. But the California Supreme Court's exposition of California law is authoritative and binding on this Court. See, e.g., Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law [and] we are bound by their constructions except in extreme circumstances"); Wainwright v. Goode, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed. 2d 187 (1983) (per curiam) ("The views of the State's highest court with respect to state law are binding on the federal courts"); Ring v. Arizona, 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002) (recognizing the Arizona Supreme Court's construction of the Arizona sentencing law as authoritative).

- - - - - - - - - - - End Footnotes - - - - - - - - - - -

[*65]

Moreover, the California system, like the post-Booker federal regime, recognizes that a sentencing judge must have the ability to look at all the relevant facts -- even those outside the trial record and jury verdict -- in exercising his or her discretion. "The judicial factfinding that occurs during that selection process is the same type of judicial factfinding that traditionally has been a part of the sentencing process." Black, supra, at 1258, 113 P.3d at 545.

- - - - - - - - - - End Footnotes - - - - - - - - - -

III

Despite these similarities between the California system and the "advisory Guidelines" scheme approved in Booker, the Court nevertheless holds that the California regime runs afoul of the Sixth Amendment. The Court reasons as follows: (1) California requires that some aggravating fact, apart from the elements of the offense found by the jury, must support an upper term sentence; (2) Blakely defined the "statutory maximum" to be "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," 542 U.S. at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original); and therefore (3) the California regime violates "Appendi" [*66] s bright-line rule," id., at 308, 124 S. Ct. 2531, 159 L. Ed. 2d 403, that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" Apprendi, 530 U.S. at 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435.

This argument is flawed. For one thing, it is not at all clear that a California court must find some case-specific, adjudicative "fact" (as opposed to identifying a relevant policy consideration) before imposing an upper term sentence. What a California sentencing court must find is a "circumstance in aggravation," Cal. Penal Code Ann. § 1170(b) (emphasis added), which, California's Court Rules make clear, can include any "criteria reasonably related to the decision being made." Rule 4.408(a).

California courts are thus empowered to take into account the full panoply of factual and policy considerations that have traditionally been considered by judges operating under fully discretionary sentencing regimes -- the constitutionality of which the Court has repeatedly reaffirmed. California law explicitly authorizes a sentencing court to take into account, for example, broad sentencing objectives like punishment, deterrence, [*67] restitution, and uniformity, see Rule 4.410, and even a judge's "subjective belief" as to the appropriateness of the sentence, see Stevens, supra, at 1457, 251 Cal.Rptr. at 177, as long as the final result is reasonable. n9 Policy considerations like these have always been outside the province of the jury and do not implicate the Sixth Amendment concerns expressed in Apprendi.

- - - - - - - - - - - Footnotes - - - - - - - - - - -

n9 The State of California acknowledged in its brief that "the court can rely on essentially any reason placing the defendant's particular offense outside the mean when selecting' which term of the trial to impose. Brief for Respondent 32. As California's counsel acknowledged at oral argument, a concern for deterrence in light of an uptick in crime in a particular community, for example, could be a "circumstance in aggravation" supporting imposition of an upper term sentence under California law, even though that concern is not based on judge-found, case-specific facts. See Tr. of Oral Arg. 32-40.

- - - - - - - - - - - End Footnotes - - - - - - - - - - -

short, the [*68] requirement that a California court find some "circumstance in aggravation" before imposing an upper term sentence is not the same as a requirement that to find an aggravating *fact*. And if a California sentencing court need not find a fact beyond a reasonable doubt "reflected in the jury verdict or admitted by the defendant," *Blakely, supra, at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403* (emphasis deleted), then *Apprendi*'s "bright-line rule" plainly does not apply. n10

- - - - - - - - - - Footnotes - - - - - - - - - -

10 It is true that California's Court Rules also itemize more concrete aggravating "circumstances that they label "facts relating to the crime" and "facts relating to the defendant." *See* Cal. Rules of Court (Criminal Cases) 4.421 and 4.423 (West 2006). But these lists are not exhaustive, and they do not impair a court's ability to take into account more general sentencing objectives in deciding whether to sentence a defendant to the upper term. The Rules' provision that "circumstances in aggravation and mitigation shall be established by a preponderance of the evidence," Rule 4.420(b), is clearly meant to cover the types of crime- and defendant-specific adjudicative facts set forth in the Rules immediately following; there is nothing to suggest that this provision excludes consideration of more general sentencing objectives that are not conducive to such trial-type proof. As the Rules explicitly recognize, these different categories of sentencing considerations are not mutually exclusive. See Rule 4.410(b) ("The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case").

- - - - - - - - - End Footnotes - - - - - - - - -

But even if the California law did require that a sentencing court find some aggravating "fact" [*69] before imposing an upper term sentence, that would not make this case constitutionally distinguishable from *Booker*. As previously explained, the "advisory Guidelines," bounded by reasonableness review, effectively (albeit less explicitly) impose the same requirement on federal judges. *Booker*'s reasonableness review necessarily supposes that some sentences will be unreasonable in the absence of additional facts justifying them. (Recall the over-hypothetical case in which it was posited that the district court imposed a sentence of 50 years of imprisonment for mail fraud without citing a single aggravating fact about the offense or the offender.) Thus, although the post-*Booker* Guidelines are labeled "advisory," reasonableness review imposes a very real constraint on a judge's ability to sentence across the full statutory range without finding some aggravating fact. n11

- - - - - - - - - - Footnotes - - - - - - - - - -

n11 The Court believes that in order to reach this conclusion, I must "preview . . . how 'reasonableness review,' *post-Booker*, works," *ante*, at 15, n. 13, and perhaps even prejudge this Court's forthcoming decisions in *Rita* and *Claiborne*, *ante*, at 20, n. 15. But my point is much more modest. We need not map all the murky contours of the post-*Booker* landscape in order to conclude that reasonableness review must mean *something*. If reasonableness review is more than just an empty exercise, there inevitably will be *some* sentences that, absent any judge-found aggravating fact, will be unreasonable. One need not embrace any presumption of reasonableness or unreasonableness to accept this simple point. If this is the case -- and I cannot see how it is not, given the Court's endorsement of reasonableness review in *Booker* -- then there is no meaningful Sixth Amendment difference between California's sentencing system and the post-*Booker* "advisory Guidelines." Under both, a sentencing judge operating under a reasonableness constraint must find facts beyond the jury's verdict in order to justify the imposition of at least some sentences at the high end of

the statutory range.

- - - - - - - - - End Footnotes - - - - - - - - -   [*70]

The Court downplays the significance of *Booker* reasonableness review on the ground that *Booker*-style "reasonableness . . . operates *within* the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints." *Ante*, at 20 (emphasis in original). But this begs the question, which concerns the scope of "Sixth Amendment constraints." That question is answered by the Court's remedial holding in *Booker*, which necessarily stands for the proposition that it is consistent with the Sixth Amendment for the imposition of an enhanced sentence to be conditioned on a factual finding made by a sentencing judge and not by a jury.

The Court relies heavily on *Blakely*'s admonition that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S., at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original). But the Court fails to recognize how this statement must be understood in the wake of *Booker*.

For each statutory offense, there must be a sentence that represents the least onerous sentence that can be regarded [*71] as reasonable in light of the bare statutory elements found by the jury. To return to our prior example of a mail fraud offense, there must be some sentence that represents the least onerous sentence that would be appropriate in a case in which the statutory elements of mail fraud are satisfied but in which the offense and the offender are as little deserving of punishment as can be imagined. (Whether this sentence is the statutory minimum (probation, see 18 U.S.C. § 1341 (2000 ed., Supp. IV)) or the minimum under the advisory Guidelines (probation, see United States Sentencing Commission, Guidelines Manual § 2B1.1 and Sentencing Table (Nov. 2006)) is irrelevant for present purposes). This sentence is "the maximum sentence" that could reasonably be imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, *supra*, at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis deleted).

*Booker*'s reasonableness review necessarily anticipates that the imposition of sentences above this level may be conditioned upon findings of fact made by a judge [*72] and not by the jury. *Booker* held that a system of "advisory Guidelines" with reasonableness review is consistent with the Sixth Amendment, and the same analysis should govern California's "requirement that the decision to impose the upper term be *reasonable*." *Black*, 35 Cal. 4th, at 1255, 113 P.3d, at 544 (emphasis in original). That the California requirement is explicit, while the federal aggravating factor requirement is (at least for now) implicit, should not be constitutionally dispositive.

Unless the Court is prepared to overrule the remedial decision in *Booker*, the California sentencing scheme at issue in this case should be held to be consistent with the Sixth Amendment. I would therefore affirm the decision of the California Court of Appeal.

Service: Get by LEXSEE®
Citation: 2007 u.s. lexis 1324
View: Full
Date/Time: Tuesday, January 23, 2007 - 6:47 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No. If yes, give the following information:

 a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

 *SECOND APPELLATE DISTRICT DEVISION S'EVEN*

 b. Result *AFFIRMED*    c. Date of decision: *OCTOBER 30TH 2001*

 d. Case number or citation of opinion, if known: *B143385*

 e. Issues raised: (1) *APPELLANTS SENTENCE OF 17 YRS TO LIFE VIOLATED 6TH AND 8TH AMENDMENT U.S.C. INEFFECTIVE ASSISTANCE OF CONSEL FOR FAILURE TO OBJECT*

 (2) *ON BASIS OF CRUEL AND OR UNUSUAL PUNISHMENTS.*

 (3) _____

 f. Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

 _____

 _____

9. Did you seek review in the California Supreme Court? ☒ Yes ☐ No. If yes, give the following information:

 a. Result *DENIED*    b. Date of decision: *JANUARY 16TH 2002*

 c. Case number or citation of opinion, if known: *S102355*

 *APPELLANTS SENTENSE OF 17 YRS TO LIFE VIOLATED*

 d. Issues raised: (1) *6TH AND 8TH AMENDMENT U.S.C. INEFFECTIVE ASSISTANCE OF CONSEL FOR FAILURE TO OBJECT*

 (2) *ON BASIS OF CRUEL AND OR UNUSUAL PUNISHMENT.*

 (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

 *NO ISSUE WAS MADE BY APPEAL ATTORNEY*

 _____

11. Administrative Review:

 a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal. 3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review.

 _____

 _____

 _____

 _____

 _____

 _____

 _____

 _____

 b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.

 Attach documents that show you have exhausted your administrative remedies.

CR-292

ABSTRACT OF JUDGMENT -- PRISON COMMITMENT--INDETERMINATE
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]*

000093

| | |
|---|---|
| [ X ] SUPERIOR    COURT OF CALIFORNIA, COUNTY OF _____ LOS ANGELES<br>[ ] MUNICIPAL    BRANCH OR JUDICIAL DISTRICT:   CENTRAL CRIMINAL | **FILED**<br>LOS ANGELES SUPERIOR COURT |

| | | | |
|---|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA   vs    DOB: **11-21-62**<br>DEFENDANT   **LIZARRAGA, FRANCISCO JAVIER** | **BA199787** | -A | AUG – 7 2000 |
| AKA: | | -B | JOHN A. CLARKE, CLERK |
| CII#:   **A09401692** | | -C | *D. Hernandez*<br>BY D. HERNANDEZ, DEPUTY |
| BOOKING #:   **5987356**    [ ] NOT PRESENT | | | |
| COMMITMENT TO STATE PRISON    [ ] AMENDED<br>ABSTRACT OF JUDGMENT    ABSTRACT | | -D | |

| DATE OF HEARING   **07-25-00** | DEPT. NO.   **117** | JUDGE   **BARBARA R JOHNSON** |
|---|---|---|
| CLERK   **L CAMPA** | REPORTER   **G ORONA** | PROBATION NO. OR PROBATION OFFICER   **X1480249** |
| COUNSEL FOR PEOPLE   **M BREWER** | COUNSEL FOR DEFENDANT   **P E NAMETH**    [ ] APPT'D | |

1. Defendant was convicted of the commission of the following felonies:
   [ ] Additional counts are listed on attachment
       (number of pages attached ____

| | | | | | | CONVICTED BY | | | CONCURRENT | CONSECUTIVE | 654 STAY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | JURY | COURT | PLEA | | | |
| 1 | PC | 209(B)(1) | KIDNAP TO COMMIT ROBBERY | 1999 | 07, 10, 00 | X | | | | | |
| 2 | PC | 209.5(A) | KIDNAP FOR CARJACKING | 1999 | 07, 10, 00 | X | | | | | X |
| 3 | PC | 211** | ROBBERY 2ND | 1999 | 07, 10, 00 | X | | | | | X |
| 4 | PC | 215(A) | CARJACKING | 1999 | 07, 10, 00 | X | | | | | X |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| CNT | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 12022.53(B) | 10 | | | | | | 10 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

3. ENHANCEMENTS charge and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST enhancements stricken under PC 1385.

| CNT | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Defendant was sentenced to State Prison for an INDETERMINATE TERM:
4. [ ] For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts ____ ___ ___.
5. [ ] For LIFE WITH POSSIBILITY OF PAROLE on counts _____.
6. [ X ] For _____ **7** years to life, WITH POSSIBILITY OF PAROLE on counts _**1**_ _____.
     PLUS enhancement time shown above.
7. [ ] Additional determinate term (see CR-290).
8. Defendant was sentenced pursuant to [ ] PC 667(b)-(i) or PC 1170.12   [ ] PC 667.61   [ ] PC 667.7   [ ] PC 667.9
                 [ ] other *(specify):*
This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for indeterminate sentences. Attachments may be used but must be referred to in this document.
(Continued on reverse)

| | | |
|---|---|---|
| Form Adopted by the<br>Judicial Council of California<br>CR-292 [Rev. January 1, 199] | ABSTRACT OF JUDGMENT--PRISON COMMITMENT--INDETERMINATE<br>*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]* | Penal Code<br>§§1170,<br>1213, 1213.5 |

C312

FRANCISCO JAVIER LIZARRAGA
P89773 - A-4-114-L
SALINAS VALLEY ESTATE PRISON
P.O. BOX 1050
Soledad CA 93960

STATE PRISON
GENERATED MAIL

LEGAL MAIL ONLY

UNITED STATES District Court FOR the Northern D.
U. S. Courthouse
450 Golden Gate Avenue
San Francisco, CA.  94102-3483

POSTAGE DUE